**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EDWARD DANE BRASSETTE**, | |
| *Plaintiff*, | **CIVIL ACTION NO**. |
| v. | |
| **ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND d/b/a TULANE UNIVERSITY** | |
| *Defendant*. | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiff, Edward Dane Brassette ("Plaintiff" or "Mr. Brassette"), by and through undersigned counsel, hereby submits his Complaint against Administrators of the Tulane Educational Fund doing business as Tulane University ("Defendant" or "Tulane").

## INTRODUCTION

1.

Plaintiff Edward Dane Brassette, by and through his attorney, brings this action against Tulane for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., Age Discrimination Employment Act ("ADEA"), and violations of 42 U.S.C. § 1981 et seq.

## JURISDICTION AND VENUE

2.

1

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; (ii) the ADEA, and (iii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over Tulane. Defendant Tulane is a for-profit corporation doing business in Louisiana. At all times relevant, Tulane operated its business within the State of Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendant alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

**PARTIES**

6.

Plaintiff Edward Dane Brassette is a Caucasian male at 59 years of age. At all relevant

times, Plaintiff has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

Upon information and belief, Tulane is a university engaged in providing education in the New Orleans, Louisiana area. At all relevant times, Tulane has met the definition of an "employer" under all applicable statutes.

**FACTS**

8.

Tulane is a privately owned company that provides education throughout Louisiana and employees about 4,600 individuals across the United States, including Louisiana.

9.

The Defendant, Tulane, operates a branch of its company at 6823 St Charles Ave, New Orleans, LA 70118.

10.

On or about March 2007, Plaintiff started his employment with Tulane. Plaintiff started as a Commercial Carpenter and was later promoted to a Painting Supervisor in 2013.

11.

As a Painting Supervisor, Plaintiff was responsible supervising the completion of assignments, reviewing employee's time management, evaluating painters and assistant painters on an ongoing basis, and counseling employees in his department.

12.

Whenever a paint department employee was found violating a rule or regulation, Plaintiff was responsible for preparing a Staff Counseling Report. This report was then submitted to

Sharon Valle (African American) a Human Resources representative, for review. If Ms. Valle approved the report, the employee is notified, and disciplinary action is taken. However, if Ms. Valle rejects the report or fails to respond, the employee was not informed of the report and no disciplinary action was imposed.

13.

In support of his allegation of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Brassette further alleges:

14. Plaintiff is a member of a protected class, Caucasian.

15. Tulane engaged in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff been an African American employee, Tulane would not have engaged in intentional racial discrimination against Plaintiff.

16. On or about August 16, 2022, Plaintiff reported Leroy Clanton (African American) for failing to record his billable hours in the TMA software. This is a requirement per Mr. Clanton's job description. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

17. On or about August 19, 2022, Plaintiff reported Perry Harris (African American) for failing to perform any of his job duties for the initial thirty (30) minutes of his shift. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

18. On or about August 30, 2022, Plaintiff reported Mr. Clanton for failing to record his billable hours in the TMA software. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about September 2, 2022.

4

19. On or about September 1, 2022, Assistant Supervisor Leandro Sobrino and Plaintiff observed Triney Matthews (African American), Mr. Clanton, and Mr. Harris failing to perform their job duties from 1:30 p.m. to 2:20 p.m. Plaintiff reported these observations to his direct Manager, Willery Autin. Manager Autin instructed Plaintiff to prepare a Staff Counseling Report for each individual. The Staff Counseling Reports were submitted to Ms. Valle for review and approval on or about September 2, 2022.

20. On or about September 2, 2022, Plaintiff emailed Ms. Valle questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle and therefore was unable to counsel the members of his department. Plaintiff did not receive a response from Ms. Valle.

21. On or about September 16, 2022, Plaintiff emailed Ms. Valle again questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle.

22. AVP Dhanika Galloway emailed Plaintiff information on the Office of Institutional Equity ("OIE"). Ms. Galloway introduced OIE as a resource to assist supervisors in performing their job duties more effectively.

23. On or about October 24, 2022, Plaintiff reported Mr. Clanton and Mr. Harris for failing to perform any of their job duties for the first eighty (80) minutes of their shift. The Staff Counseling Reports were sent to Ms. Valle for review and approval on or about October 26, 2022.

24. On or about November 9, 2022, Plaintiff reported Mr. Clanton for taking an unauthorized break. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about November 14, 2022.

25. On or about November 15, 2022, Plaintiff reported Mr. Harris for not performing his job duties, clocking out prior to his shift ending, harassment, and creating a hostile work environment. Mr. Harris screamed profanity aimed towards Plaintiff that was witnessed by Tulane employees, Jorge Funesbain and Franklin Sarmiento. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about November 17, 2022.

26. On or about November 30, 2022, Plaintiff emailed Ms. Valle questioning the status of his Staff Counseling Report submitted on November 17, 2023. Plaintiff did not receive a response from Ms. Valle.

27. On or about December 2, 2022, Plaintiff attended a meeting with AVP Galloway, Manager Guido Salvatierra, Manager Autin, and Ms. Valle. Mr. Clanton issued a complaint against Plaintiff for harassment.

28. Plaintiff questioned Mr. Clanton for his work performance efficiency at the campus nursery school, Newcomb Childcare. Plaintiff's job duties include counseling an employee to ensure a job completion is done in a timely manner. Mr. Clanton expressed reluctance to put forth effort, believing that promotion opportunities were unavailable to him. In response, Plaintiff stated, "that is a poor work ethic." Plaintiff did not issue a Staff Counseling Report for Mr. Clanton's performance. However, Mr. Clanton alleged that Plaintiff harassed him by telling him he has a poor work ethic.

29. In the meeting, Ms. Valle declared that Plaintiff is only writing up black people and not the Hispanics. Plaintiff refused the allegation and clarified that he writes people up for their violations not because of their race. Plaintiff made a complaint of discrimination, that Tulane management are directing him to write up Hispanic employees for adhering to their job duties, while rejecting his attempts to issue write-ups against African

6

American employees.

30. Plaintiff was not given a written disciplinary action nor Staff Counseling Report for Mr. Clanton's complaint. However, Plaintiff was ordered to attend Management Development Program meetings.

31. On or about December 6, 2022, Plaintiff emailed OIE to report Mr. Perry's verbal harassment from November 17, 2022.

32. On or about December 19, 2022, Plaintiff received an email to attend a meeting with OIE representative Ms. Terina Walker. Ms. Walker stated in her email, the OIE investigates "complaints involving possible discrimination, harassment, retaliation or sexual violence" and that they work to "prevent any discriminatory and/or harassing conduct that creates a hostile or unsafe learning or work environment". Ms. Walker was investigating Mr. Clanton's complaint against Plaintiff.

33. On or about December 22, 2022, Plaintiff's OIE complaint against Mr. Perry was assigned to Tiffany Smith. Ms. Smith stated, "the incidents and behaviors described are not matters that fall within the OIE's purview" and this matter had been referred to HR Rep Sharon Valle for handling."

34. Plaintiff received a response from Ms. Valle regarding his Staff Counseling Reports after 128 days. Ms. Valle denied all of Plaintiff's reports concerning Mr. Harris and Mr. Clanton. Instead, she recommended that Plaintiff undergo additional training and attend an OIE Conflict Resolution meeting.

35. On or about March 13, 2023, Plaintiff received an email from Ms. Walker declaring that, "more likely than not that you engaged in the reported conduct which is a violation of Tulane Policy". Ms. Walker failed to state the specific policy that was violated. Plaintiff's

7

disciplinary action was delegated to Ms. Valle and Manager Autin.

36. On or about April 3, 2023, Plaintiff attended a meeting with Manager Autin and Ms. Valle. Manager Autin was instructed to read out loud a letter given by Ms. Valle. The letter detailed that Plaintiff is being terminated for "failing to treat co-workers and others with courtesy, dignity, and respect."

37. After Manager Autin finished reading the letter, Manager Autin requested Ms. Valle to instead suspend Plaintiff. Ms. Valle refused Manager Autin's request stating, "no, he is being fired because he has a history of writing up black people." Plaintiff was terminated.

38. Mr. Harris, who harassed and spew profanity towards Plaintiff was never disciplined and remained employed with Tulane. Mr. Clanton was never disciplined for Plaintiff's Staff Counseling Reports and instead was promoted to Assistant Supervisor of Painters.

39. According to the Tulane University Staff Handbook:

> "An employee who violates a university policy should receive a verbal warning, a written warning, and/or suspension for failing to comply with a policy and practice of the University by violating a policy."

40. Prior to April 3, 2023, Plaintiff never suffered any written disciplinary action or Staff Counseling Report in his sixteen (16) years of employment with Tulane. Despite his clean record, Plaintiff was terminated for adhering to his job duties.

41. Mr. Brassette was subjected to racial discrimination. Mr. Brassette alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional racial discrimination in violation of the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

8

42.

In support of his allegation of age discrimination under ADEA, Mr. Brassette further alleges:

43. Plaintiff is a member of a protected class, an individual over the age of fifty (50). Mr. Brassette is 59 years of age. Prior to Plaintiff's termination, he was five (5) years away from retirement.

44. Tulane engaged in intentional age discrimination in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff been under the age of forty (40), Tulane would not have engaged in intentional age discrimination against Plaintiff.

45. On or about August 16, 2022, Plaintiff reported Leroy Clanton, an employee who is believed to be around twenty (20) years younger than Plaintiff for failing to record his billable hours in the TMA software. This is a requirement per Mr. Clanton's job description. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

46. On or about August 19, 2022, Plaintiff reported Perry Harris, an employee who is believed to be younger than Plaintiff for failing to perform any of his job duties for the initial thirty (30) minutes of his shift. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

47. On or about August 30, 2022, Plaintiff reported Mr. Clanton for failing to record his billable hours in the TMA software. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about September 2, 2022.

48. On or about September 1, 2022, Assistant Supervisor Leandro Sobrino and Plaintiff observed Triney Matthews (African American), Mr. Clanton, and Mr. Harris failing to

perform their job duties from 1:30 p.m. to 2:20 p.m. Plaintiff reported these observations to his direct Manager, Willery Autin. Manager Autin instructed Plaintiff to prepare a Staff Counseling Report for each individual. The Staff Counseling Reports were submitted to Ms. Valle for review and approval on or about September 2, 2022.

49. On or about September 2, 2022, Plaintiff emailed Ms. Valle questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle and therefore was unable to counsel the members of his department. Plaintiff did not receive a response from Ms. Valle.

50. On or about September 16, 2022, Plaintiff emailed Ms. Valle again questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle.

51. AVP Dhanika Galloway emailed Plaintiff information on the Office of Institutional Equity ("OIE"). Ms. Galloway introduced OIE as a resource to assist supervisors in performing their job duties more effectively.

52. On or about October 24, 2022, Plaintiff reported Mr. Clanton and Mr. Harris for failing to perform any of their job duties for the first eighty (80) minutes of their shift. The Staff Counseling Reports were sent to Ms. Valle for review and approval on or about October 26, 2022.

53. On or about November 9, 2022, Plaintiff reported Mr. Clanton for taking an unauthorized break. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about November 14, 2022.

54. On or about November 15, 2022, Plaintiff reported Mr. Harris for not performing his job duties, clocking out prior to his shift ending, harassment, and creating a hostile work

10

environment. Mr. Harris screamed profanity aimed towards Plaintiff that was witnessed by Tulane employees, Jorge Funesbain and Franklin Sarmiento. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about November 17, 2022.

55. On or about November 30, 2022, Plaintiff emailed Ms. Valle questioning the status of his Staff Counseling Report submitted on November 17, 2023. Plaintiff did not receive a response from Ms. Valle.

56. On or about December 2, 2022, Plaintiff attended a meeting with AVP Galloway, Manager Guido Salvatierra, Manager Autin, and Ms. Valle. Mr. Clanton issued a complaint against Plaintiff for harassment.

57. Plaintiff questioned Mr. Clanton for his work performance efficiency at the campus nursery school, Newcomb Childcare. Plaintiff's job duties include counseling an employee to ensure a job completion is done in a timely manner. Mr. Clanton expressed reluctance to put forth effort, believing that promotion opportunities were unavailable to him. In response, Plaintiff stated, "that is a poor work ethic." Plaintiff did not issue a Staff Counseling Report for Mr. Clanton's performance. However, Mr. Clanton alleged that Plaintiff harassed him by telling him he has a poor work ethic.

58. In the meeting, Ms. Valle declared that Plaintiff is only writing up black people and not the Hispanics. Plaintiff refused the allegation and clarified that he writes people up for their violations not because of their race. Plaintiff made a complaint of discrimination, that Tulane management are directing him to write up Hispanic employees for adhering to their job duties, while rejecting his attempts to issue write-ups against African American employees.

59. Plaintiff was not given a written disciplinary action nor Staff Counseling Report for Mr.

11

Clanton's complaint. However, Plaintiff was ordered to attend Management Development Program meetings.

60. On or about December 6, 2022, Plaintiff emailed OIE to report Mr. Perry's verbal harassment from November 17, 2022.

61. On or about December 19, 2022, Plaintiff received an email to attend a meeting with OIE representative Ms. Terina Walker. Ms. Walker stated in her email, the OIE investigates "complaints involving possible discrimination, harassment, retaliation or sexual violence" and that they work to "prevent any discriminatory and/or harassing conduct that creates a hostile or unsafe learning or work environment". Ms. Walker was investigating Mr. Clanton's complaint against Plaintiff.

62. On or about December 22, 2022, Plaintiff's OIE complaint against Mr. Perry was assigned to Tiffany Smith. Ms. Smith stated, "the incidents and behaviors described are not matters that fall within the OIE's purview" and this matter had been referred to HR Rep Sharon Valle for handling."

63. Plaintiff received a response from Ms. Valle regarding his Staff Counseling Reports after 128 days. Ms. Valle denied all of Plaintiff's reports concerning Mr. Harris and Mr. Clanton. Instead, she recommended that Plaintiff undergo additional training and attend an OIE Conflict Resolution meeting.

64. On or about March 13, 2023, Plaintiff received an email from Ms. Walker declaring that, "more likely than not that you engaged in the reported conduct which is a violation of Tulane Policy". Ms. Walker failed to state the specific policy that was violated. Plaintiff's disciplinary action was delegated to Ms. Valle and Manager Autin.

65. On or about April 3, 2023, Plaintiff attended a meeting with Manager Autin and Ms.

12

Valle. Manager Autin was instructed to read out loud a letter given by Ms. Valle. The letter detailed that Plaintiff is being terminated for "failing to treat co-workers and others with courtesy, dignity, and respect."

66. After Manager Autin finished reading the letter, Manager Autin requested Ms. Valle to instead suspend Plaintiff. Ms. Valle refused Manager Autin's request and Plaintiff was terminated.

67. Mr. Harris, who harassed and spew profanity towards Plaintiff was never disciplined and remained employed with Tulane.

68. Mr. Clanton was never disciplined for any of Plaintiff's Staff Counseling Reports and instead was promoted to Assistant Supervisor of Painters.

69. Assistant Supervisor Leandro Sobrino was assigned as Plaintiff's replacement. Upon information and belief, Mr. Sobrino is approximately fifteen (15) years younger than Plaintiff.

70. According to the Tulane University Staff Handbook:

> "An employee who violates a university policy should receive a verbal warning, a written warning, and/or suspension for failing to comply with a policy and practice of the University by violating a policy."

71. Prior to April 3, 2023, Plaintiff never suffered any written disciplinary action or Staff Counseling Report in his sixteen (16) years of employment with Tulane. Despite his clean record, Plaintiff was terminated for adhering to his job duties.

72. Mr. Brassette was subjected to age discrimination. Mr. Brassette alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional age discrimination in violation of the terms and conditions of Plaintiff's

employment under the Age Discrimination Employment Act.

73.

In support of his allegation of retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, Mr. Brassette further alleges:

74. Plaintiff is a member of a protected class, Caucasian.

75. Tulane engaged in intentional retaliation in violation of the terms and conditions of Plaintiff's employment. Had Plaintiff been an African American employee, Tulane would not have engaged in intentional retaliation against Plaintiff.

76. On or about August 16, 2022, Plaintiff reported Leroy Clanton (African American) for failing to record his billable hours in the TMA software. This is a requirement per Mr. Clanton's job description. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

77. On or about August 19, 2022, Plaintiff reported Perry Harris (African American) for failing to perform any of his job duties for the initial thirty (30) minutes of his shift. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about August 22, 2022.

78. On or about August 30, 2022, Plaintiff reported Mr. Clanton for failing to record his billable hours in the TMA software. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about September 2, 2022.

79. On or about September 1, 2022, Assistant Supervisor Leandro Sobrino and Plaintiff observed Triney Matthews (African American), Mr. Clanton, and Mr. Harris failing to perform their job duties from 1:30 p.m. to 2:20 p.m. Plaintiff reported these observations to his direct Manager, Willery Autin. Manager Autin instructed Plaintiff to prepare a

14

Staff Counseling Report for each individual. The Staff Counseling Reports were submitted to Ms. Valle for review and approval on or about September 2, 2022.

80. On or about September 2, 2022, Plaintiff emailed Ms. Valle questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle and therefore was unable to counsel the members of his department. Plaintiff did not receive a response from Ms. Valle.

81. On or about September 16, 2022, Plaintiff emailed Ms. Valle again questioning the status of his previous Staff Counseling Reports. Plaintiff did not receive a response from Ms. Valle.

82. AVP Dhanika Galloway emailed Plaintiff information on the Office of Institutional Equity ("OIE"). Ms. Galloway introduced OIE as a resource to assist supervisors in performing their job duties more effectively.

83. On or about October 24, 2022, Plaintiff reported Mr. Clanton and Mr. Harris for failing to perform any of their job duties for the first eighty (80) minutes of their shift. The Staff Counseling Reports were sent to Ms. Valle for review and approval on or about October 26, 2022.

84. On or about November 9, 2022, Plaintiff reported Mr. Clanton for taking an unauthorized break. The Staff Counseling Report was sent to Ms. Valle for review and approval on or about November 14, 2022.

85. On or about November 15, 2022, Plaintiff reported Mr. Harris for not performing his job duties, clocking out prior to his shift ending, harassment, and creating a hostile work environment. Mr. Harris screamed profanity aimed towards Plaintiff that was witnessed by Tulane Employees, Jorge Funesbain and Franklin Sarmiento. The Staff Counseling

15

Report was sent to Ms. Valle for review and approval on or about November 17, 2022.

86. On or about November 30, 2022, Plaintiff emailed Ms. Valle questioning the status of his Staff Counseling Report submitted on November 17, 2023. Plaintiff did not receive a response from Ms. Valle.

87. On or about December 2, 2022, Plaintiff attended a meeting with AVP Galloway, Manager Guido Salvatierra, Manager Autin, and Ms. Valle. Mr. Clanton issued a complaint against Plaintiff for harassment.

88. Plaintiff questioned Mr. Clanton for his work performance efficiency at the campus nursery school, Newcomb Childcare. Plaintiff's job duties include counseling an employee to ensure a job completion is done in a timely manner. Mr. Clanton expressed reluctance to put forth effort, believing that promotion opportunities were unavailable to him. In response, Plaintiff stated, "that is a poor work ethic."

89. In the meeting, Ms. Valle declared that Plaintiff is only writing up black people and not the Hispanics. Plaintiff refused the allegation and clarified that he writes people up for their violations and not because of their race.

90. Plaintiff made a complaint of discrimination, that Tulane management are directing him to write up Hispanic employees even though they were adequately performing their job duties, while rejecting his attempts to issue write-ups against African American employees.

91. Plaintiff did not issue a Staff Counseling Report for Mr. Clanton's performance. However, Mr. Clanton alleged that Plaintiff harassed him by telling him he has a poor work ethic. Plaintiff was not given a written disciplinary action nor Staff Counseling Report. Plaintiff was ordered to attend Management Development Program meetings.

92. On or about December 6, 2022, Plaintiff emailed OIE to report Mr. Perry's verbal harassment from November 17, 2022.

93. On or about December 19, 2022, Plaintiff received an email to attend a meeting with OIE representative Ms. Terina Walker. Ms. Walker stated in her email, the OIE investigates "complaints involving possible discrimination, harassment, retaliation or sexual violence" and that they work to "prevent any discriminatory and/or harassing conduct that creates a hostile or unsafe learning or work environment". Ms. Walker was investigating Mr. Clanton's complaint against Plaintiff.

94. On or about December 22, 2022, Plaintiff's OIE complaint against Mr. Perry was assigned to Tiffany Smith. Ms. Smith stated, "the incidents and behaviors described are not matters that fall within the OIE's purview" and this matter had been referred to HR Rep Sharon Valle for handling."

95. Plaintiff received a response from Ms. Valle regarding his Staff Counseling Reports after 128 days. Ms. Valle denied all of Plaintiff's reports concerning Mr. Harris and Mr. Clanton. Instead, she recommended that Plaintiff undergo additional training and attend an OIE Conflict Resolution meeting.

96. On or about March 13, 2023, Plaintiff received an email from Ms. Walker declaring that, "more likely than not that you engaged in the reported conduct which is a violation of Tulane Policy". Ms. Walker failed to state the specific policy that was violated. Plaintiff's disciplinary action was delegated to Ms. Valle and Manager Autin.

97. On or about April 3, 2023, Plaintiff attended a meeting with Manager Autin and Ms. Valle. Manager Autin was instructed to read out loud a letter given by Ms. Valle. The letter detailed that Plaintiff is being terminated for "failing to treat co-workers and others

with courtesy, dignity, and respect."

98. After Manager Autin finished reading the letter, Manager Autin requested Ms. Valle to instead suspend Plaintiff. Ms. Valle refused Manager Autin's request stating, "no, he is being fired because he has a history of writing up black people." Plaintiff was terminated.

99. Mr. Harris, who harassed and spew profanity towards Plaintiff was never disciplined and remained employed with Tulane. Mr. Clanton was never disciplined for Plaintiff's Staff Counseling Reports and instead was promoted to Assistant Supervisor of Painters.

100. Mr. Clanton made a complaint about harassment against Plaintiff, and he was not terminated. Instead, Mr. Clanton received a promotion subsequent to Plaintiff's termination.

101. Ms. Valle made a complaint against Plaintiff for racial discrimination, and she was allowed to remain working.

102. According to the Tulane University Staff Handbook:

"An employee who violates a university policy should receive a verbal warning, a written warning, and/or suspension for failing to comply with a policy and practice of the University by violating a policy."

103. Prior to April 3, 2023, Plaintiff never suffered any written disciplinary action or Staff Counseling Report in his sixteen (16) years of employment with Tulane. Despite his clean record, Plaintiff was terminated for adhering to his job duties.

104. Mr. Brassette was subjected to retaliation. Mr. Brassette alleges that, through discovery based on these allegations, Plaintiff will prove defendant did in fact engage in intentional retaliation in violation the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.,

and 42 U.S.C. § 1981.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 (Racial Discrimination)

105.

Plaintiff states a cause of action for racial discrimination because of his protected activities against the defendant as he is protected under Title VII of Civil rights act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraph 13, as if fully set forth herein.

106.

Plaintiff is a member of a protected class-Caucasian.

107.

Defendant has engaged in intentional racial discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination and termination all in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

108.

Defendant's conduct violates Title VII.

109.

By the conduct described above, Defendant intentionally deprived the Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

19

110.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq, the Plaintiff has been denied employment advancement opportunities providing additional compensation, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling him to compensatory damages.

111.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named Caucasian employee, and thereby entitling him to an award of punitive damages.

112.

Plaintiff's requests for relief are set forth below.

**AS FOR THE SECOND COUNT AGAINST
DEFENDANT AHMG FOR A VIOLATION OF
Age Discrimination Employment Act (ADEA)
(Age Discrimination)**

113.

Plaintiff states a cause of action for age discrimination because of his protected activities with the defendant as he is protected under the ADEA Plaintiff repeats and re-alleges the allegations contained in paragraphs 42 as if fully set forth herein.

114.

 Plaintiff is a member of a protected class, over the age of fifty (50).

115.

Defendant has engaged in intentional age discrimination in violation of the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to

20

intentional discrimination and termination all in violation the ADEA.

116.

Defendant's conduct violates the ADEA.

117.

As a result of defendant's discrimination in violation of the ADEA the Plaintiff has been denied employment advancement opportunities providing additional compensation, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling Plaintiff to compensatory damages.

118.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named employee who is above the age of fifty (50), and thereby entitling him to an award of punitive damages.

119.

Plaintiff's requests for relief are set forth below.

<u>**AS FOR THE THIRD CAUSE OF ACTION AGAINST**</u>
<u>**DEFENDANTS FOR A VIOLATION OF**</u>
<u>**Title VII of the Civil Rights Act of 1964, as amended,**</u>
<u>**42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981**</u>
<u>**(Retaliation)**</u>

120.

Plaintiff states a cause of action for retaliation because of his protected activities against the defendant as he is protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 Plaintiff repeats and re-alleges the allegations contained in paragraph 73, as if fully set forth herein.

121.

21

Plaintiff complained of racial discrimination, that Defendant is directing him to write up Hispanic employees for adhering to their job duties, while rejecting his write-ups against African Americans, and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

122.

Defendant has engaged in intentional retaliation discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination and termination all in violation of the Civil Rights Act of 1964.

123.

Defendant's conduct violates Title VII.

124.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq., the Plaintiff has suffered an unlawful termination, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby entitling him to compensatory damages.

125.

In its discriminatory actions as alleged above, defendant has acted with malice or reckless indifference to the rights of the above-named Caucasian employee, and thereby entitling him to an award of punitive damages.

126.

Plaintiff's requests for relief are set forth below.

## ADMINISTRATIVE PROCEDURES

1.

On or about May 23, 2023, the Plaintiff filed a timely Charge of Discrimination against Administrators of the Tulane Educational Fund, alleging discrimination with the Equal Employment Opportunity Commission ("EEOC").  (A true and accurate copy of EEOC Charge of Discrimination # 461-2023-02139, is attached hereto as "Exhibit A")

2.

On or about June 26, 2024, the EEOC issued a "Determination and Notice Of Rights" letter for his Charge of Discrimination. On or about June 27, 2024, Plaintiff received this letter. (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2023-02139, is attached hereto as "Exhibit B".

3.

To remedy the violations of the rights of the Plaintiff, plaintiff requests that the Court award the relief prayed for below.

## PRAYER FOR RELIEF

**WHEREFORE**, Edward Dane Brassette prays for the following relief:

1.

That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of Mr. Brassette under Title VII, the ADEA, Louisiana Revised Statute §23:631-632, and any other cause(s) of action that can be inferred from the facts set forth herein;

23

2.

All damages which Mr. Brassette has sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits he would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiff of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

4.

An award representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Mr. Brassette costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiff of compensatory and punitive damages against Defendant, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

24

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## JURY DEMAND

Mr. Brassette demands a trial by jury of all issues do triable in this action.

Respectfully submitted this 23rd day of September 2024.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. Minias*
**Christopher A. Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com

## SERVICE INFORMATION

Plaintiff mailed this day, September 23, 2024, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: Victoria D. Johnson 6823 St Charles Ave Suite 300 Gibson Hall, New Orleans, LA 70118.

*/s/ Christopher Minias*
CHRISTOPHER MINIAS

25