UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD DANE BRASSETTE,<br>   Plaintiff | CIVIL ACTION |
| VERSUS | NO. 24-2311 |
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND,<br>   Defendant | SECTION "E" (3) |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant, Administrators of the Tulane Educational Fund ("Defendant" or "Tulane").[1] Plaintiff, Edward Brassette, ("Plaintiff") filed an opposition to the motion.[2] Defendant filed a reply.[3] After considering the law and the parties' briefs, the Court **GRANTS** Defendant's motion for summary judgment.

### FACTUAL BACKGROUND

This case arises out of an employment relationship between Plaintiff and Tulane University that was terminated in April 2023.[4] Tulane contends it terminated Plaintiff's employment because Plaintiff discriminated against Black employees by harassing, screaming at, excessively monitoring, and unreasonably disciplining them.[5] Plaintiff contends in reality Tulane terminated Plaintiff on account of his race (Caucasian), age (59), and in retaliation for his complaining of race discrimination.[6] On September 9, 2024, Plaintiff initiated this lawsuit, bringing claims of race discrimination pursuant to

---

[1] R. Doc. 33.
[2] R. Doc. 35
[3] R. Doc. 37.
[4] R. Doc. 1. at p. 8 ¶ 36.
[5] R. Doc. 33-1 at p. 1.
[6] R. Doc. 1. at pp. 19-22.

1

Title VII of the Civil Rights Act of 1964 ("Title VII"), age discrimination under the Age Discrimination Employment Act ("ADEA"), and retaliation under Title VII.[7] On October 8, 2025, Tulane filed the instant Motion for Summary Judgment,[8] which Plaintiff opposes.[9]

The following facts are not in dispute. In 2007, Tulane University's Director of Maintenance and Trades, Willery Autin, hired Plaintiff to work as a carpenter and painter in Tulane's Campus Services and Facilities Department.[10] In 2016, Autin promoted Plaintiff to Paint Supervisor.[11] The painting crew Plaintiff supervised included Black, Caucasian, and Hispanic painters.[12] As a supervisor, Plaintiff had the authority to "write up" employees by initiating a "Staff Counseling Report" ("SCR") for violations of workplace rules.[13] Supervisors are expected to discuss potential discipline with employees before initiating a report.[14] As a supervisor, Plaintiff "wrote up" four African-American painters: Leroy Clanton, Roderick Baptiste, Perry Harris, and Trinney Matthews on various occasions from 2018 to 2022.[15] On Decembre 5, 2022, Mr. Clanton submitted a complaint with Tulane Office of Institutional Equity ("OIE") that Plaintiff subjected him to race discrimination.[16] Plaintiff submitted his own complaint with Tulane OIE on December 8, 2025, saying an SCR he filed was not being taken seriously because Plaintiff was not a minority; he argues this was a form of race and age discrimination.[17] Tulane

---

[7] *Id.*
[8] R. Doc. 33.
[9] R. Doc. 35.
[10] R. Doc. 33-8 at p. 1, ¶ 1; R. Doc. 35-1 at p.1, ¶ 1.
[11] R. Doc. 33-8 at p. 1, ¶ 2; R. Doc. 35-1 at p.1, ¶ 2.
[12] R. Doc. 33-8 at p. 2, ¶ 4; R. Doc. 35-1 at p.1, ¶ 4.
[13] R. Doc. 33-8 at p. 2, ¶ 5; R. Doc. 35-1 at p.1, ¶ 5.
[14] R. Doc. 33-8 at p. 2, ¶ 6; R. Doc. 35-1 at p.1, ¶ 6.
[15] R. Doc. 33-8 at p. 2, ¶ 8; R. Doc. 35-1 at p.2, ¶ 8.
[16] R. Doc. 33-8 at p. 7, ¶ 33; R. Doc. 35-1 at p.7, ¶ 33.
[17] R. Doc. 35 at p. 9.

OIE Investigator Terina Walker conducted an investigation into Mr. Clanton's complaint.[18] Tulane terminated Plaintiff on April 3, 2023.[19]

## LEGAL STANDARD

### I. Race Discrimination Under Title VII and Age Discrimination under the ADEA are analyzed under the *McDonnell Douglas* Burden Shifting Framework.

At the summary judgment stage, courts apply the *McDonnell Douglas* burden shifting framework when analyzing claims of disparate treatment based on circumstantial evidence.[20] "In a disparate treatment case, an employee must establish that [his] employer had a discriminatory intent or motive for taking a job-related action."[21] A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination.[22] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[23] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[24] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *McDonnell Douglas* burden-shifting analysis.[25]

Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[26] If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, non-

---

[18] R. Doc. 33-8 at p. 7, ¶ 34; R. Doc. 35-1 at p.7, ¶ 34.
[19] R. Doc. 33-8 at p. 8, ¶ 41; R. Doc. 35-1 at p.1, ¶ 2.
[20] *Cardiel v. Apache Corp.*, 559 Fed.Appx. 284, 288 (5th Cir. 2014) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[21] *Ricci v. DiStefano*, 557 U.S. 557, 577 (2009).
[22] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (5th Cir. 1983).
[23] *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (1993).
[24] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[25] *Cardiel*, 559 Fed.Appx. at 288 (5th Cir. 2014) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[26] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994) (applying *McDonnell Douglas* test).

discriminatory reason for its employment decision. The employer must merely articulate a legitimate, nondiscriminatory reason for its employment action.[27] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[28]

After an employer offers a non-discriminatory reason for terminating the employee, the "employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual."[29] "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[30] The Fifth Circuit held in *Rodriguez v. City of Corpus Christi* that, when an employer claims to have fired an employee for inadequate performance, at the summary judgment stage, "'[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.'"[31] Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason, and mere disputes in the evidence concerning job performance do not demonstrate that this nondiscriminatory reason amounts pretext.[32] Rather, as the Fifth Circuit explained in *Waggoner v. City of Garland*, the ultimate issue is whether the employer reasonably believed its own stated reason for termination and whether the decision to discharge the employee was based on that belief.[33] When an employer

---

[27] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).
[28] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[29] *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016).
[30] *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001))).
[31] *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 10921 (5th Cir. 1995).
[32] *Id.*
[33] *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1996).

terminates an employee based on an investigation finding employee misconduct, the court must determine whether the employer reasonably relied on the investigation in deciding to terminate the employee.[34]

### B. The *McDonnell Douglas* Burden Shifting Framework Also Applies to Retaliation Under Title VII.

The *McDonnell Douglas* burden shifting framework also applies to claims of retaliation under Title VII. As in a disparate treatment claim, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to offer a non-retaliatory reason for terminating Plaintiff.[35] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[36] Once the defendant offers non-retaliatory reasons for its adverse employment action, the burden shifts back to the plaintiff, who must produce evidence demonstrating that defendant's proffered non-retaliatory reasons amount to pretext.[37] At summary judgment, to demonstrate pretext on a Title VII retaliation claim, the plaintiff "must show a conflict in substantial evidence" on the question of whether Defendant would not have demoted Plaintiff "but for" the protected activity.[38]

## LAW AND ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims: (1) his racial discrimination claim under Title VII; (2) his age discrimination claim under the ADEA; and (3) his retaliation claim under Title VII. The Court addresses Defendant's arguments below.

---

[34] *See id.*
[35] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[36] *Id.*
[37] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).
[38] *Avvood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459, 463 (5th Cir. 2019) (citing *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013)).

I. **Defendant is entitled to summary judgment on Plaintiff's Title VII Race Discrimination Claim and Plaintiff's ADEA Age Discrimination Claim.**

A. **Plaintiff Has Made a Prima Facie Case of Race Discrimination Under Title VII and Age Discrimination Under the ADEA.**

In this case, Plaintiff has not produced any evidence that, on its face, shows Defendant acted in a discriminatory way. In the absence of direct evidence showing Defendant's alleged discriminatory motive, Plaintiff relies on circumstantial evidence, and therefore the *McDonnell Douglas* framework applies.[39]

The Court will first address whether Plaintiff has made a prima facie case of race discrimination under Title VII and age discrimination under the ADEA. Federal courts apply the same *McDonnell Douglas* burden-shifting framework and analysis to claims of racial discrimination under Title VII and age discrimination under the ADEA.[40] As a result, this Court will address both of these disparate treatment claims at the same time. To make a prima facie case of race discrimination under Title VII or age discrimination under the ADEA, Plaintiff must show he (1) is in a protected class; (2) was qualified for the job; (3) suffered an adverse employment act; and (4) (for Title VII) was replaced by someone outside of his protected class or treated less favorably than similarly situated employees outside the protected class, or (for ADEA) was replaced by someone outside of his protected class, replaced by someone younger, or otherwise discharged because of his age.[41]

Defendant concedes, for purposes of summary judgment, that Plaintiff can satisfy the first, third, and fourth prongs of a prima facie case for a Title VII race discrimination

---

[39] *See Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015).
[40] *Allen v. United States Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023); *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).
[41] *Id.*

claim and an ADEA age discrimination claim.[42] As a result, whether or not Plaintiff established a prima facie case of race or age discrimination hinges on the second prong of the prima facie case, whether Plaintiff was qualified for his job.

Defendant argues that Plaintiff's discriminatory and harassing conduct towards the Black painters rendered him unqualified for the job of paint supervisor.[43] Defendant points to Plaintiff's job description, which stated that Plaintiff was required to "appropriately supervise and evaluate all of the painters, to maintain cooperative working relationships with all co-workers, to exercise sound judgment and discretion, and to ensure that his own conduct complied with Tulane policies."[44] It argues that Plaintiff violated this policy by unjustifiably disciplining and excessively monitoring the Black painters on his staff while not exhibiting the same behaviors towards non-Black workers. Defendant states that Plaintiff acknowledged in his own deposition testimony that he lacked justification for meting out discipline to the four Black painters and Defendant argues that such violations demonstrated his unfitness to work as paint supervisor.[45] In response, Plaintiff argues that Defendant mischaracterizes his deposition testimony, and that Plaintiff did in fact have legitimate reasons for submitting SCRs on these painters.[46]

Defendant cites only to one case, a district court decision, in which the court suggested in dicta that an employee was not qualified for his position at the time of his termination due to the employee's misconduct.[47] However, in *Bienkowski v. American Airlines, Inc.,* the Fifth Circuit held that a Plaintiff may establish he was qualified for a position by showing that he "continued to possess the necessary qualifications for his job

---

[42] R. Doc. 33-1 at p. 15
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] R. Doc. 35 at pp. 4-7.
[47] *Maldonado v. Mattress Direct, Inc.*, No. 13-6773, 2015 WL 1415735, at *3-4 (E.D. La. Mar. 27, 2015).

at the time of the adverse action."[48] The Court elaborated in a footnote that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired."[49] In this case, there are no facts indicating that Plaintiff was physically unable to perform his job or that he lacked the necessary experience and training to do so.

Even assuming a violation of policy could render an employee unqualified for a position, the Court finds that Plaintiff has made a prima facie case that he did not violate Tulane policy. Specifically, Plaintiff alleges that his discipline of the four Black painters was justified and offers some evidence in support of his claim. For example, in Defendant's deposition, he stated that on October 1, 2018, he did not immediately write up Mr. Harris, Mr. Baptiste, and Mr. Clanton after seeing them on a break, but instead asked them why they were taking an unauthorized work break and why Mr. Clanton was in the wrong work area.[50] Similarly, Plaintiff states he submitted a report on Mr. Clanton for failing to input his time because Mr. Clanton regularly neglected to input his time despite frequent reminders.[51]

Moreover, Defendant's account of the two verbal altercations between Plaintiff and Mr. Harris and Mr. Clanton differs from Plaintiff's. Defendant states that on November 15, Plaintiff and Mr. Harris became embroiled in a shouting match after Plaintiff instructed Mr. Harris, but not two Hispanic painters, to pick up trash and sweep the floors.[52] However, Plaintiff in his deposition testified that he did not have time to direct the Hispanic painters to perform the same tasks before Mr. Harris began yelling and

---

[48] 851 F.2d 1503, 1506 (5th Cir. 1988).
[49] *Id.* at n.3.
[50] R. Doc. 35-2, Plaintiff's Deposition, 97:23-98:16.
[51] *Id.* at 249:7-21.
[52] R. Doc. 33-1 at p. 9.

8

cursing at him.[53] Furthermore, Plaintiff acknowledges that on December 5, 2022, he told Mr. Clanton he would not recommend him for a promotion based on his work performance, but Plaintiff denies this encounter was explosive or that his refusal to recommend Mr. Clanton was racially based.[54] Instead, Plaintiff stated in his deposition that he told Mr. Clanton "if they do come to me, I would tell them you don't have a good work ethic."[55]

Plaintiff was physically able to perform his job, and he had the experience and training needed. Furthermore, Plaintiff has offered prima facie proof in the form of his deposition testimony that he did not violate Tulane policy by discriminating against and harassing the Black painters. Accordingly, Plaintiff has made a prima facie case that he was qualified for his job as paint supervisor.

> **B.    The Burden Shifts to Defendant to Proffer Non-Discriminatory Reasons for the Adverse Employment Action.**

As Plaintiff has established a prima facie case of both race and age discrimination, the burden shifts to Tulane to produce a legitimate, non-discriminatory reason for its employment decision. The employer must merely articulate a legitimate, nondiscriminatory reason for its employment action.[56] In this case, Defendant states that following Mr. Harris's complaint of racial discrimination, Tulane initiated an OIE investigation led by Investigator Walker. Walker interviewed Plaintiff, Mr. Clanton, and several employees who had witnessed interactions between Plaintiff and the Black employees. Following these interviews, Walker concluded that "evidence supported Mr. Clanton's complaint that [Plaintiff] treats the African-American employees differently

---

[53] R. Doc. 33-2, Plaintiff Deposition., 141:5-142:9,
[54] R. Doc. 35-1 at p. 6 ¶ 32.
[55] R. Doc. 35-2, Plaintiff's Deposition, 159:3-15.
[56] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

than the Hispanic employees that he manages and that it is more likely than not that race is a contributing factor in [his] conduct."[57] As a result, she found that Plaintiff engaged in conduct that violated Tulane's anti-discrimination and equal opportunity policies; Defendant then terminated Plaintiff for this violation.[58]

"The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[59] Defendant has articulated a neutral reason for its termination of Plaintiff and, accordingly, has met its burden of production. "The employee must [now] present evidence that the articulated reason is pretextual."[60]

### C. The Burden Shifts to Plaintiff to Demonstrate Defendant's Reason for the Adverse Employment Action Is Pretext for Race Discrimination.

The Court will now address Plaintiff's evidence that Defendant's non-discriminatory reason for terminating him was merely a pretext for race discrimination. As stated above, when an employer claims to have fired an employee for inadequate performance, "'[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.'"[61] Mere disputes in the evidence concerning job performance do not demonstrate pretext, as the ultimate issue is whether the employer reasonably believed its own stated reason for termination and whether the decision to discharge the employee was based on that belief.[62] When an employer terminates an employee based on an investigation finding employee

---

[57] R. Doc. 33-7 at pp. 2-6.
[58] R. Docs. 33-2 at p. 272, Exh. 26; 33-7 at p. 5.
[59] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[60] *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016).
[61] *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025).
[62] *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1996).

10

misconduct, the court must determine whether the employer reasonably relied on the investigation in deciding to terminate the employee.[63]

As evidence that Defendant's stated reason for firing Plaintiff amounts to pretext for race discrimination, Plaintiff claims that Defendant was aware his actions towards the Black workers had nothing to do with race.[64] He claims Defendant "chose to manufacture a violation of equal employment policies as a pretext to terminate him" and did not investigate his charge of discrimination that he filed with OIE on December 8, 2022.[65]

Plaintiff disagrees with Investigator Walker's findings that Plaintiff more likely than not discriminated against the four Black painters, but this disagreement is not sufficient to demonstrate pretext. The issue is not whether Defendant made an incorrect decision as to whether Plaintiff discriminated against Black employees. Instead, Plaintiff must show that Defendant terminated him due to a discriminatory motive rather than the findings of the OIE investigation.[66] In this case, Tulane began an OIE investigation into Plaintiff following Mr. Clanton's December 5, 2022 complaint. Investigator Walker interviewed multiple witnesses to Plaintiff's interactions with the four Black painters.[67] On April 3, Defendant terminated Plaintiff via letter, stating that he was being terminated "following an OIE investigation concluding…more likely than not that [he] engaged in the reported conduct, which is a violation of Tulane's Equal Opportunity/Anti-Discrimination Policies."[68] One of the witnesses that OIE Investigator Walker interviewed, Mr. Bourlet, who was a painter supervised by Plaintiff, stated that Plaintiff

---

[63] *See id.*
[64] R. Doc. 35 at pp. 18-19.
[65] *Id.* at p. 19.
[66] *Rodriguez*, 129 F.4th at 900.
[67] R. Doc. 33-7
[68] R. Doc. 33-2, Plaintiff's Deposition, Exh. 26 (Termination Letter).

11

was "disrespectful and openly argue[d] with the African American paint employees."[69] Similarly, Mr. Sobrino, a Hispanic painter supervised by Plaintiff, stated that Plaintiff frequently clashed with the Black painters but did not have issues with Hispanic employees.[70] Mr. Clanton, one of the four Black painters, also told Investigator Walker that Plaintiff yelled at him and the other Black painters daily but did not yell at the Hispanic painters.[71] In addition, Investigator Walker, a Black woman, stated that Plaintiff became hostile in her interview of him and started yelling at her.[72] She also assessed the credibility of each witness, and found Plaintiff to be less credible than Sobrino, Clanton, and Bourlet.[73] These findings demonstrate that Defendant reasonably believed that Plaintiff did in fact discriminate against the Black painters, and terminated him based on this belief.

Plaintiff has failed to offer any evidence that Tulane did not reasonably rely on the findings of this investigation in forming its decision to terminate Plaintiff, but instead terminated him based on his race. As a result, Plaintiff has failed to demonstrate that Defendant's stated reason for terminating Plaintiff was pretextual, and Defendant is entitled to judgment as a matter of law as to Plaintiff's Title VII racial discrimination claim.

    **D.    Burden Shifts to Plaintiff to Demonstrate Defendant's Reason for the Adverse Employment Action Is Pretext for Age Discrimination.**

The Court will now address whether Defendant's stated reason for firing Plaintiff was actually pretext for age discrimination. As stated above, Plaintiff has failed to

---

[69] R. Doc. 33-7 at p. 4.
[70] *Id.*
[71] *Id.* at p. 2.
[72] *Id.* at p. 5.
[73] *Id.* at p. 4.

demonstrate that Defendant's stated reason for terminating him on the basis of its investigation was false or unworthy of credence. However, Plaintiff may still demonstrate that Defendant's nondiscriminatory reason is pretextual via evidence of disparate treatment.[74] In an attempt to show Defendant's stated reason for terminating him was pretextual via evidence of disparate treatment, Plaintiff states that multiple employees, including Leandro Sobrino, a younger employee who eventually replaced Plaintiff, referred to Plaintiff as "old school."[75] Plaintiff does not state when his co-workers made these comments.

These comments from Plaintiff's co-workers fail to show disparate treatment. In order for comments in the workplace to provide evidence of disparate treatment, the comments must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."[76] "'Sporadic' comments 'untethered to specific speakers or times'" do not offer evidence addressing the ultimate issue, whether the defendant intentionally discriminated.[77]

Human Resources Business Partner Sharon Valle and Associate Vice-President of Human Resources Ruth Riley testified in their depositions that Randy Philipson made the ultimate decision to terminate Plaintiff.[78] While Plaintiff claims that comments about his being "old school" and the fact that Sobrino eventually assumed his position demonstrate disparate treatment and therefore establish pretext, Plaintiff cannot show that the workers who made these comments had any influence or leverage in his

---

[74] *Allen v. United States Postal Serv.*, 63 F.4th 292, 301 (5th Cir. 2023).
[75] *Id.* at p. 23-24.
[76] *Goudeau v. National Oilwell Varco, L.P,* 793 F.3d 470, 475-76 (5th Cir. 2015).
[77] *Williams v. Waste Management*, Inc., 818 Fed.Appx.315, 322-23 (5th Cir. 2020).
[78] R. Docs. 33-4, Valle Deposition, 97:10-13; R. Doc. 35-2, Riley Deposition, 62:8-12.

13

termination. While Plaintiff claims the fact that Sobrino made these comments and eventually replaced him creates an inference of age discrimination, Plaintiff does not show that Sobrino or any of these other unnamed commenters terminated him or had any authority over the decision to terminate him. Furthermore, Plaintiff does not identify the other alleged commenters or specify when these comments were made. Accordingly, Plaintiff has not offered evidence of disparate treatment sufficient to establish that Defendant's stated reason for terminating Plaintiff amounts to pretext. Defendant is entitled to judgment as a matter of law on Plaintiff's ADEA claim.

## II. Defendant is entitled to summary judgment on Plaintiff's Retaliation Claim.

Plaintiff alleges that Defendant violated Title VII by terminating him in retaliation for complaining of racial discrimination in an email to OIE on December 8, 2022.[79] In this email to OIE, Plaintiff stated that his staff counseling report concerning Mr. Harris's inappropriate behavior during their November 15, 2022 argument was not being taken seriously due to Plaintiff's race.[80]

Again, a plaintiff may use either direct or circumstantial evidence to prove a case of retaliation under Title VII. If a plaintiff relies on circumstantial evidence, the *McDonnell Douglass* burden shifting framework applies.[81] As Plaintiff relies on circumstantial evidence, the court will analyze these claims under *McDonnell Douglass*. If Plaintiff establishes a prima facie case, the burden then shifts to the defendant to state legitimate, non-retaliatory reasons for its decision; following this response, the burden shifts back to the Plaintiff to rebut Defendant's stated reason.[82]

---

[79] R. Doc. 35 at p. 16.
[80] *Id.*
[81] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[82] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).

### A. Plaintiff Has Failed to Make a Prima Facie Showing of Title VII Retaliation.

Title VII prohibits an employer from taking adverse employment action against an employee because he engages in protected activity.[83] "To establish a prima facie case of retaliation, a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action."[84]

Defendant argues Plaintiff has not satisfied elements (1) and (3) of a prima facie case of retaliation, as he did not participate in an activity protected under Title VII and does not demonstrate a causal connection between the protected activity and the adverse action.[85]

Defendant states that because Plaintiff did not specifically claim in his email to OIE that Defendant engaged in conduct that was discriminatory, he did not engage in a protected activity. In order to have participated in protected activity, "[t]he employee's 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by [Title VII] and a call for their protection.'"[86] In this case, Plaintiff sent an email on December 8, 2022 to Tiffany Smith, the Director of Institutional Equity and Resolution Management, stating that he believed his complaints about Mr. Harris harassing him were not being taken seriously due to the fact that he was "not a minority nor a member of a protected class."[87] Plaintiff's email clearly shows that Plaintiff was opposing perceived

---

[83] *Joseph v. Phillips*, No. 13-5254, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).
[84] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).
[85] R. Doc. 33-1 at pp. 19-21.
[86] *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025).
[87] R. Doc. 35-2 at p. 770.

15

discrimination based on his status as a White male.[88] As Title VII prohibits employers from discriminating based on race, Plaintiff's email serves as an assertion of his rights under Title VII. As a result, Plaintiff engaged in protected activity under Title VII and satisfies the first element of a prima facie case of retaliation.

However, Plaintiff cannot satisfy the third prong: showing a causal connection between the protected activity and the adverse employment action. A Plaintiff may sometimes satisfy the causal connection element by showing a close temporal proximity between the protected activity and the adverse action; however, such temporal proximity must be "very close."[89] In *Clark v. County School District v. Breeden*, the Supreme Court favorably cited a case holding that a three-month period without additional evidence of retaliation was insufficient to establish a causal connection.[90] In this case, Plaintiff was terminated nearly four months after his email to OIE complaining of racial discrimination; the period between Plaintiff's EEOC charge and the adverse employment action is too long on its own to show a causal connection.

Plaintiff does not offer other evidence sufficient to demonstrate a causal connection. The Fifth Circuit has held that an employee can establish a causal link at the prima facie stage when evidence demonstrates that the adverse action was "based in part on knowledge of the employee's protected activity."[91] Even when the ultimate decisionmaker is unaware of a plaintiff's protected activity, a plaintiff may still establish a causal connection via a "cat's paw theory."[92] This requires the plaintiff to show that a person with a retaliatory animus used a decisionmaker to bring about an intended

---

[88] R. Doc. 35 at p. 16.
[89] *Lyons v. Katy Independent School District.*, 964 F.3d 298, 306-7 (5th Cir. 2020).
[90] 532 U.S. 268, 273 (2001).
[91] *Saketkoo v. Administrators of Tulane Educational Fund*, 31 F.4th 990, 1001 (5th Cir. 2022).
[92] *Saketoo*, 31 F.4th at 1001.

16

retaliatory action.[93] In determining whether or not a "cat's paw" theory applies, a court will look to the degree to which the decisionmaker's actions were based on his or her own independent investigation or the recommendation of someone with retaliatory animus.[94]

Sharon Valle and Ruth Riley testified that Randy Philipson made the ultimate decision to terminate Plaintiff, not Sharon Valle or Terina Walker.[95] As Plaintiff has not demonstrated that Philipson was aware of Plaintiff's December 8, 2022 email, Defendant claims that no causation exists between the protected activity and the adverse employment action.[96]

Plaintiff invokes the cat's paw theory, claiming that Valle harbored a retaliatory animus towards him and influenced Philipson's decision. Plaintiff testified in his deposition that Sharon Valle pointed out that he was a White man writing up Black workers, and that Plaintiff needed to write up Hispanic employees.[97] Even if Valle had made this statement, this does not demonstrate that Valle sought to retaliate against Plaintiff for his protected activity. First of all, this alleged comment occurred on December 2, 2022, before Plaintiff filed his OIE complaint.[98] In addition, while it may show that Valle disagreed with the way Plaintiff disciplined the Black workers, it does not show that she would have sought to terminate Plaintiff for filing an OIE complaint.

Moreover, no evidence in the record indicates that Valle influenced Philipson's decision to terminate Plaintiff. While Ruth Riley stated in her 30(b)(6) deposition that Valle consulted with Randy Philipson about Plaintiff's discipline,[99] this does not

---

[93] *Id.*
[94] *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996).
[95] R. Docs. 33-4, Valle Deposition, 97:10-13; R. Doc. 35-2, Riley Deposition, 62:8-12.
[96] R. Doc. 33-1 at p. 27.
[97] R. Doc. 35-2, Plaintiff's Deposition, 172:18-175:25.
[98] R. Doc. 35 at p. 13.
[99] R. Doc. 35-2, Riley Deposition, 62:1-11.

demonstrate that Valle leveraged her position with Philipson to retaliate against Plaintiff. In fact, no testimony or documents show that Valle recommended Plaintiff be terminated. Accordingly, Plaintiff has offered no evidence demonstrating that a person with retaliatory animus towards Plaintiff influenced Philipson's decision. As Plaintiff has not offered evidence demonstrating a causal connection between Plaintiff's protected activity and his termination, he has failed to make a prima facie case of retaliation under Title VII.

### B. If A Prima Facie Case is Established, the Burden Shifts to Plaintiff to Demonstrate a Non-Retaliatory Reason for Terminating Plaintiff.

If Plaintiff had established a prima facie case of retaliation, the burden would shift to Defendant to offer a non-discriminatory reason for terminating Plaintiff.[100] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[101] Defendant met its burden of production, stating that it fired Plaintiff due to his violation of Tulane's anti-discrimination policy.[102] The burden now shifts to Plaintiff to demonstrate that the articulated reason is pretextual by showing that Defendant would not have terminated him "but for" his protected activity.[103]

### C. Plaintiff Fails to Demonstrate Pretext.

As Defendant offered non-retaliatory reasons for its adverse employment action, the burden shifts back to Plaintiff, who must produce evidence showing Defendant's proffered reasons are pretext.[104] For a Title VII retaliation claim, at summary judgment, a plaintiff demonstrates pretext by "show[ing] a conflict in substantial evidence" on the

---

[100] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[101] *Id.*
[102] R. Doc. 33-1 pp. 16-17.
[103] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).
[104] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).

question of whether Defendant would not have demoted Plaintiff "but for" the protected activity.[105]

Plaintiff fails to carry this burden. While Plaintiff disputes the findings of the OIE investigation, Plaintiff points to no evidence showing that Defendant had a retaliatory motive in terminating him. Defendant has offered both Terina Walker's declaration and its letter terminating Plaintiff, which show that Philipson based his decision to fire Plaintiff on the result of the OIE investigation. Plaintiff does not offer any evidence showing Tulane did not in fact reasonably rely on this investigation, and no evidence connects Plaintiff's December 8, 2022, OIE complaint with his termination. As a result, Plaintiff has not offered evidence showing that Defendant would not have demoted Plaintiff "but for" his protected activity. Because Plaintiff has failed to offer evidence showing that a retaliatory motive played any role in Defendant's decision to discipline her, his retaliation claim fails as a matter of law.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**New Orleans, Louisiana, this 1st day of December, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[105] *Avvood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459, 463 (5th Cir. 2019) (citing *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013)).